IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOYCE FRANKLIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:07-cv-006-TMP |
| CITY OF HOMEWOOD, *et al.*, | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This cause is before the court on the motions to dismiss filed by defendant Linda Cook in her official capacity, and by the defendant City of Homewood. The matters have been fully briefed. Having considered all the pleadings and arguments of the parties, the court finds the motions to dismiss are due to be granted.

**STANDARD OF REVIEW**

Because this case is before the court on two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must assume as true all of the "well-pleaded" facts set in the plaintiff's complaint. In <u>Conley v Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), the Supreme Court stated that a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." "[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." <u>Quality Foods de</u>

Centro Am. S.A. v. Latin Am. Agribusiness Develop. Corp., 711 F.2d 989, 995 (11th Cir. 1983). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise detail the specific facts upon which she bases her claim. The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept.8, 1981)).

Although the court must accept the factual allegations of the complaint as true, it is not required to accept legal conclusions masquerading as facts. As one district court recently reiterated:

> Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. The pleadings are construed broadly so that all well-pleaded facts are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. Cooper v. Pate, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); Conner v. Tate, 130 F.Supp. 2d 1370, 1373 (N.D.Ga. 2001). However, the court need not "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

Smith v. Delta Air Lines, Inc., 422 F.Supp. 2d 1310, 1324 (N.D. Ga. 2006).

Very recently, the Supreme Court commented on Rule 12(b)(6) dismissals, retiring the Conley v Gibson "no set of facts" standard, saying:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (May 21, 2007). The Supreme Court in Twombly clearly raised the threshold for factual allegations in a complaint from "conceivable" to "plausible". See Watts v Florida International University, ___ F.3d ___ (11th Cir. No. 05-13852 (Aug. 17, 2007) (the facts pleaded in the complaint, taken as true, must be sufficient to suggest that the claim is plausible, not merely speculative); Anderson v. Nichols, No. 3:07cv45/RV/EMT, 2007 WL 2020165 (N.D. Fla. July 9, 2007). Although the plaintiff has argued that the motions should be evaluated in light of Conley, Twombly clearly instructs that "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough" and "this famous observation has earned its retirement." 127 S. Ct. at 1269. Instead, the "well-pleaded" facts

of the complaint must be such that plaintiff has a "plausible" theory of recovery, one that a reasonable person could find factually possible.

## **DISCUSSION**

Plaintiff filed a complaint in state court asserting violations of her constitutional rights to due process and equal protection, and seeking relief pursuant to 42 U.S.C. § 1981 and 1983. The court has read this four-count complaint as alleging the following claims:

> Count I — Defendants "willfully, wantonly and with malice ... disregarded any rules and regulations of the Jefferson County Personnel Board in order to deprive Plaintiff of the pay and position to which she is and has been entitled," and that this "deprived Plaintiff of the property interest which she has secured to her in the due process clauses of the United States and Alabama Constitutions," all in violation of 42 U.S.C. §§ 1981 and 1983.
>
> Count II — Defendants denied "Plaintiff the benefits of the merit system for which the Jefferson County Personnel Board and merit system was established," thereby depriving plaintiff of the "right to make and enforce contracts" available to all other citizens, and depriving her of equal protection and due process of law under the federal and state constitutions, all in violation of 42 U.S.C. §§ 1981 and 1983.
>
> Count III — Defendants (a) have "negligently" deprived the plaintiff of the pay and benefits to which she is entitled; (b) have "knowingly and willfully" deprived plaintiff of pay and benefits to which she is entitled by "disregard[ing] the rules related to the public merit system..."; and (c) have "set out in a plan to punish and retaliate against the Plaintiff in violation of the Fair Labor Standards Act" [29 U.S.C. § 215(a)(3)] and in violation of state and federal constitutional rights to due process and equal protection.
>
> Count IV — Defendants (a) have breached a contractual duty to classify and pay plaintiff properly; (b) have violated a duty not to retaliate against her for invoking "the laws and contract made for her benefit between Defendant and the Jefferson County Personnel Board"; and (c) have engaged in a scheme to fraudulently deprive plaintiff of "recognition and compensation and benefits for her work" by "making false representations to the [Jefferson County Personnel] Board and to Plaintiff regarding her job duties, classification and benefits...."

The defendants removed this action to federal court on the basis that plaintiff's claims arise under federal law, and that any non-federal claims may also be removed pursuant to 28 U.S.C. § 1331.

A motion to dismiss was filed by defendant Cook, seeking dismissal of all claims filed against her in her official capacity on the ground that such claims actually are claims against the City of Homewood, which already is a defendant in the action as well. Because the City of Homewood is a defendant in its own right, she argues that the "official capacity" claims against her are redundant of the claims against the City. The plaintiff filed a response to the motion to dismiss, arguing that she should be entitled to maintain both her official-capacity suit against the individual defendant and her claims against the municipal defendant. Plaintiff argues, *inter alia*, that she is entitled to relief, such as injunctive relief, specifically against Cook acting in her official capacity.

This argument is without merit. Under the clear language of Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), official capacity lawsuits are "only another way of pleading an action against the entity." In this case, the City of Homewood also is a defendant, and the claims against Cook in her official capacity are duplicative of those against the City. Any relief plaintiff seeks against Cook in her official capacity may be obtained directly through her claims against the City of Homewood. This is not an instance in which prospective injunctive relief must be sought against the employees of an agency because the agency defendant itself cannot be sued due to sovereign or Eleventh Amendment immunity. See, e.g., Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326 (11th

Cir. 1999); Eubank v. Leslie, 210 Fed. Appx. 837 (11th Cir. 2006). Because the City of Homewood itself is suable (indeed, sued), any injunctive relief that is appropriate can be obtained against the City itself, and there is no need to sue the City's agent for that purpose. Accordingly, the motion to dismiss the claims against Cook in her official capacity is due to the granted and all such claims are due to be dismissed.[1]

In addition to Cook's motion to dismiss, the defendant City of Homewood seeks dismissal of certain claims asserted against it as well. Specifically, Homewood seeks dismissal of all state-law claims against it based upon the intentional acts of its agents, any purported violation of equal protection rights under the Alabama Constitution or the United States Constitution, any claims based on 42 U.S.C. § 1981, and any demand for punitive damages against the municipal defendant. Plaintiff has filed a response to the City's motion.

The court first notes that, under Alabama law, a municipality is not liable for the intentional acts of its agents. Alabama Code § 11-47-190; see also, *e.g.*, Borders v. City of Huntsville, 875 So. 2d 168, 183 (Ala. 2003), Luckie v. City of Montgomery, 758 So. 2d 560 (Ala. 1999). While a municipality may be responsible for the negligent or "unskillful" acts of its employees, this is not so with respect to intentional torts committed by a municipal employee within the line and scope of his employment. The difficulty with applying these rules to the instant complaint lies in the vague and scattered nature of the allegations of the complaint. The complaint does not appear to allege any tort theories where the City's liability is grounded merely on vicarious liability or *respondeat*

---

[1] Of course, the court here does not address any claims against Cook in her individual capacity, and those claims remain pending.

*superior*. Rather, plaintiff seems to be alleging that the City itself, through the actions of official decision-makers, failed and refused to honor her employment rights (whatever they may be) under state law. What she alleges is that she was entitled to certain employment rights and protections under state law and that the City, acting officially through its legal policy- and decision-makers, intentionally, willfully, wantonly, and/or negligently violated those rights.[2] The City's putative liability is not based merely on its position as a tortfeasor's employer, but on its own official policy decisions.

At this early stage of the case, the court cannot say as a matter of law that plaintiff cannot recover for the City's own employment-related policy decisions, or at least that she cannot successfully obtain prospective injunctive relief with respect to such claims. It is entirely "plausible" that plaintiff may obtain injunctive relief to remedy the City's alleged intentional violation of her state-law employment rights. To be clear, to the extent that plaintiff seeks recovery from Homewood on any claim arising from any alleged intentional acts of a non-policy making employee or agent of the City, such is due to be dismissed.[3] On the other hand, insofar as plaintiff alleges intentional

---

[2] The City also argues that plaintiff has insufficiently stated a basis for a breach of contract action. Although the complaint does not give specifics about the terms of the contract, it does allege that the merit system rules and regulation of the Jefferson County Personnel Board, to which the City is subject under state law, constitute the terms and conditions of an employment contract between plaintiff and Homewood. Whether this is correct or not, it is sufficient at this stage to withstand a motion to dismiss.

[3] It is not clear to this court that the complaint states any tort claims in addition to the clearly alleged claim for a breach of contract, but the complaint is replete with language accusing the defendants of acting wantonly, willfully, and with malice. In addition, the complaint seeks damages for severe emotional distress. To the extent that the complaint seeks to state a claim for the tort of outrage or some other intentional tort by a non-policy-making employee, the motion to dismiss such claims against the defendant city is due to be granted.

*policy enactments or decisions* by the City itself (or by its duly appointed policy makers, whose acts can be said to be the acts of the City itself) in violation of her state-law employment rights, Homewood's motion to dismiss is due to be denied.

To the extent that plantiff has asserted a claim that she has been deprived of equal protection under the Alabama Constitution, there is no legal basis for such a claim. Squires v. City of Saraland, ___ So.2d ___, 2007 WL 80460 (Ala. Civ. App. Jan. 12, 2007); Ex parte Melof, 735 So. 2d 1172, 1182-86 (Ala. 1999). Although plaintiff's counsel cites City of Hueytown v. Jiffy Check Co., 342 So. 2d 761 (Ala. 1977), for the proposition that the Alabama Constitution provides such authority, the Alabama Supreme Court, in the case cited by the defendants in their motion to the dismiss, clearly explained that this reading of Hueytown has been deemed to be completely erroneous:

> The question whether the Court was actually relying on the unofficial annotation to declare the existence of an equal-protection provision in Alabama was answered later that same year in Peddy v. Montgomery, 345 So.2d 631 (Ala.1977), when the Court practically quoted the annotation as if it were an accurate account of the language in Pickett:
>
>> Any doubt about whether the Constitution of Alabama contained an equal protection provision was dispelled in Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939), where it was held that §§ 1, 6 and 22 of Article 1 of the Constitution of 1901, taken together, guarantee the equal protection of the laws, and prohibit one from being deprived of his inalienable rights without due process.
>
> 345 So. 2d at 633.
>
> The fact that Alabama's so-called "equal-protection provision" sits upon a totally nonexistent foundation is evident. This lapse in judicial scholarship has been brought to the Court's attention repeatedly, see American Legion Post No. 57 v. Leahey, 681 So. 2d 1337, 1347-48 (Ala. 1996) (Houston, J., dissenting); Smith v. Schulte, 671 1334, 1347-48 (Ala. 1995) (Maddox, J., dissenting); Pinto v. Alabama Coalition for Equity, 662 So. 2d 894, 901-10 (Ala. 1995) (Houston, J., concurring in the result);

> Ex parte St. Vincent's Hosp., 652 So. 2d 225, 230-31 (Ala. 1994) (Houston, J., concurring specially); Moore v. Mobile Infirmary Ass'n, 592 So. 2d 156, 174-78 (Ala. 1991) (Houston, J., concurring in the result), and it is time that we recognized and corrected our error.
>
> As to the role of the doctrine of stare decisis in this matter, we note that "'courts are not bound by stare decisis to follow a previous interpretation [that is] later found to be erroneous.'" Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So. 2d 633, 638 (Ala. 1993) (quoting 2B Norman J. Singer, Sutherland Statutory Construction, § 49.05, at 16 (5th ed. 1992)). See also Ex parte Marek, 556 So. 2d 375, 382 (Ala. 1989) (noting that the doctrine of stare decisis does not render the courts helpless to correct their past errors). It would be difficult to imagine a more erroneous "interpretation" of Alabama constitutional law than to allow a wholly inaccurate unofficial annotation (which, by the way, has since been corrected by the Code publishers) to amend the Alabama Constitution.
>
> Therefore, we now restate what the Justices of this Court correctly declared in 1949, that "there is no equal protection clause in the Constitution of 1901." Opinion of the Justices No. 102, supra, 252 Ala. at 530, 41 So. 2d at 777. Under this rationale, then, the summary judgment was appropriate with respect to the representatives' claim that an equal-protection guarantee of the Alabama Constitution had been violated.

Ex parte Melof, 735 So. 2d at 1185-86. Thus, the Alabama Supreme Court has declared authoritatively that the Alabama Constitution contains no equal protection provision.

On the other hand, even though plaintiff asserts no claim arising from her treatment on the basis of race or other suspect classification, she does allege that she has been arbitrarily and capriciously deprived of the benefits and protections of a state-law based public merit system to which she is entitled like other similarly-situated employees, and that this deprivation violates her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Cf. Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); Griffin Industries, Inc. v. Irvin, ___ F.3d ___, 2007 WL 2363343 (11 Cir., Aug. 21, 2007) ("[A] 'class of one' claim involves

9

a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"). For purposes of a motion to dismiss such a claim, however, the plaintiff must allege with some specificity the existence of similarly situated employees and how she was treated disparately from them. As the court of appeals explained in Griffin:

> The central issue here is what degree of similarity is required for two entities to be considered "similarly situated." Too broad a definition of "similarly situated" could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties. Conversely, too narrow a definition of "similarly situated" could exclude from the zone of equal protection those who are plainly treated disparately and without a rational basis.
>
> * * *
>
> Governmental decisionmaking challenged under a "class of one" equal protection theory must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision. Accordingly, when dissimilar governmental treatment is not the product of a one-dimensional decision — such as a standard easement or a tax assessed at a pre-set percentage of market value — the "similarly situated" requirement will be more difficult to establish.
>
> * * *
>
> We have applied a similar standard to private employment discrimination claims brought under the Equal Protection Clause outside the "class of one" context. Similar employees may perform similar functions in different ways. Such differences often will be relevant to an employer's decisions, and they may lawfully result in different employment outcomes. Thus, for example, two nurses performing superficially similar roles at a hospital might differ in their job performance or tardiness. The hospital would clearly find such distinctions relevant in making employment decisions, and it would not violate the Equal Protection Clause if it did, in fact, make different decisions with respect to each employee on this basis. Accordingly, we have held that

an African-American nurse alleging that her hospital employer treated her differently from a similarly situated Caucasian nurse could not simply rely on broad generalities in identifying a comparator. Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316-19 (11th Cir. 2003). Although both nurses had similar histories of problems with coworkers, the court found it significant that the plaintiff's proposed comparator had a better record when it came to job performance and tardiness. Id. at 1316-17. In evaluating this claim, we held that employees must be "similarly situated *in all relevant respects*." Id. at 1316 (emphasis added, quotation marks and citation omitted).

We see no reason that a plaintiff in a "class of one" case should be subjected to a more lenient "similarly situated" requirement than we have imposed in other contexts. Adjudging equality necessarily requires comparison, and "class of one" plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt. See Campbell, 434 F.3d at 1314; Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) (observing that plaintiffs in a "class of one" case "must demonstrate that they were treated differently than someone who is *prima facie identical in all relevant respects*" (emphasis added)); Hicks v. Jackson County Comm'n, 374 F.Supp.2d 1084, 1096 (N.D.Ala. 2005) ("The burden of identifying similarly situated individuals is a heavy one."); cf. Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are *in all relevant respects* alike.") (emphasis added). Accordingly, when plaintiffs in "class of one" cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities "must be very similar indeed." McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004).

A "class of one" plaintiff might fail to state a claim by omitting key factual details in alleging that it is "similarly situated" to another. See GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ( "With regard to the 'similarly situated' prong, the complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless 'other' permit applicants were given better treatment. Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim....").

Griffin Industries, Inc. v. Irvin, ___ F.3d ___, ___, 2007 WL 2363343, at *10-12 (11th Cir., Aug. 21, 2007).

The complaint in this case utterly fails to allege any specifics about plaintiffs employment rights under the public merit system or the existence of truly similarly-situated employees. Certainly, the manner in which a public employer decides to classify and pay an employee is an often complex decision, involving assessment of the employer's needs, the skills of the employee, and the duties actually performed. The "class of one" equal protection theory advanced here requires the plaintiff to articulate with some specificity how she was treated differently from other employees who were similar to her in all relevant respects. The court cannot say that this complaint has stated that degree of specificity for purposes of a claim for violation of the Equal Protection Clause under the federal Constitution. Accordingly, the motion to dismiss claims premised upon an equal protection violation under the federal Constitution is due to be granted.

Plaintiff further alleges that the claims asserted in Counts I and II of the complaint arise from 42 U.S.C. § 1981, as enforced against these governmental defendants under 42 U.S.C. § 1983. See Butts v. County of Volusia, 222 F.3d 891, 892-894 (11th Cir. 2000); Palmer v. Stewart County School Dist., 178 Fed. Appx. 999 (11th Cir. 2006) (§ 1983 provides the only remedy for violation of § 1981 by state actors). Because plaintiff has made no allegations relating to racial discrimination,[4] any claim based on § 1981 also must fail. It is

---

[4] In fact, plaintiff has not described her race or the race of the individual defendant or of any other employee of the defendant City. A fair reading of the complaint leads the court to conclude that plaintiff's dissatisfaction with her treatment as an employee of the City of Homewood has no

well settled that the elements of a *prima facie* case under § 1981 are "'(1) that the plaintiff is a member of a *racial* minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" Kinnon v. Arcoub, Gopman & Assocs., Inc., slip op. No. 06-14020 (11th Cir. June 29, 2007), quoting Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004). Here, plaintiff has alleged none of these elements. Most importantly, she has not alleged that she is a member of any protected racial group or that the actions taken against her were racially motivated. Without such allegations, she cannot establish an entitlement to any rights under § 1981 that will support an action under § 1983. Accordingly, the motion as to any § 1981 claims is due to be granted, and plaintiff's claims alleged to arise under § 1981 are due to be dismissed.[5]

Finally, plaintiff asserts that she is entitled to punitive damages,[6] and defendant City of Homewood has moved to have any claim for punitive damages against it dismissed. To the extent that plaintiff seeks such damages against the municipal defendant, those damages are unavailable as a matter of law. See Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 2099, 87 L. Ed. 2d 114 (1985); City of Newport v. Fact Concerts, 453 U.S. 247, 101 S. Ct. 2748,

---

basis in race or, for that matter, in gender or ethnicity. She certainly has not alleged any such discriminatory animus.

[5] To be clear, plaintiff has other claims pursued under § 1983, most notably, her claims of denial of due process and equal protection under the Fourteenth Amendment.

[6] In her response to the motion to dismiss, plaintiff concedes that she cannot recover punitive damages from the City, but maintains that she can pursue them from defendant Cook in her personal capacity. Because Cook has not filed a motion to dismiss, except in her *official* capacity, the court need not address that point.

69 L. Ed. 2d 616 (1981) (A municipality may not be held liable for punitive damages in a § 1983 action). Accordingly, the motion as to any claim for punitive damages against the City of Homewood is due to be granted.

To the extent that the motion to dismiss seeks dismissal of any other claims, the motion is due to be denied. Not discussed in this report and recommendation are plaintiff's claims against defendant Cook in her *personal* capacity, and those claims will remain pending. Also, this report and recommendation has not attempted to deal with plaintiff's claims against the City of Homewood under § 1983 for denial of due process of law, or for retaliation under the Fair Labor Standards Act (29 U.S.C. § 215(a)(3)), or her state-law claims (whatever they may be) alleged to have been committed as an official act by the City of Homewood itself (*i.e.*, not based merely on *respondeat superior*) through its elected governing body or duly appointed policy-makers.

## RECOMMENDATION

Based upon the foregoing undisputed facts and legal conclusions, the magistrate judge RECOMMENDS that the motion to dismiss the claims against defendant Linda Cook in her official capacity (court document #6) be GRANTED and that the claims against her in her official capacity be DISMISSED.

As to the motion to dismiss certain claims against the defendant City of Homewood, the magistrate judge RECOMMENDS that the motion (court document #7) be GRANTED IN PART AND DENIED IN PART, as follows:

1.  The motion should be GRANTED, and all claims for punitive damages against the City of Homewood should be DISMISSED WITH PREJUDICE.

2.  The motion should be GRANTED, and all claims arising under 42 U.S.C. § 1981 should be DISMISSED WITH PREJUDICE for failure to allege any race-based discrimination.

3.  The motion should be GRANTED, and all claims arising under the equal protection clause of the Constitution of the State of Alabama should be DISMISSED WITH PREJUDICE.

4.  The motion should be GRANTED with respect to, and all claims alleging intentional torts by non-policy-making agents or employees of the City of Homewood should be DISMISSED WITH PREJUDICE.

5.  The motion should be DENIED with respect to all claims alleging intentional policy decisions violative of the plaintiff's state-law based employment rights made by the City of Homewood itself through its elected governing body or duly appointed policy makers, and with respect to any claim for denial of equal protection under the United States Constitution.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and

recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.

DONE the 10th day of September, 2007.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE